UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSENIA E. VIERA,

                  Plaintiff,          Civil Action No. 18-13476
                                       Honorable Arthur J. Tarnow
v.                                    Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                  Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 14]

      Plaintiff Jessenia Viera ("Viera") brings this action pursuant to 42 U.S.C. § 405(g),

challenging the final decision of Defendant Commissioner of Social Security

("Commissioner") denying her application for Supplemental Security Income ("SSI")

under the Social Security Act (the "Act"). Both parties have filed summary judgment

motions (Docs. #11, #14), which have been referred to this Court for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

      For the reasons set forth below, the Court finds that substantial evidence supports

the Administrative Law Judge's ("ALJ") conclusion that Viera is not disabled under the

Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for

Summary Judgment (**Doc. #14**) be **GRANTED**, Viera's Motion for Summary Judgment

(**Doc. #11**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the

ALJ's decision be **AFFIRMED**.

## II.    REPORT

### A.    Background

Viera was 32 years old at the time of her application date of April 26, 2016, and at 4'11" tall weighed between 95 and 130 pounds during the relevant time period.  (Tr. 44, 67, 218, 222).  She completed the tenth grade and later earned her GED.  (Tr. 46, 223).  She has very little work history and worked most recently for her mother's catering business in August 2013.  (Tr. 47, 222-23).  She now alleges disability primarily as a result of psychogenic seizures, migraine headaches, fibromyalgia, back/hip/leg pain, rheumatoid arthritis, and tremors.  (Tr. 48-49, 54, 61-62, 222, 259, 263).

After Viera's application for SSI was denied at the initial level on August 18, 2016[1] (Tr. 123-27), she timely requested an administrative hearing, which was held on September 25, 2017, before ALJ Crystal White-Simmons (Tr. 40-75).  Viera, who was represented by attorney Andrea Hamm, testified at the hearing, as did vocational expert Amelia Shelton.  (*Id.*).  On April 2, 2018, the ALJ issued a written decision finding that Viera is not disabled under the Act.  (Tr. 25-36).  On September 17, 2018, the Appeals Council denied review.  (Tr. 1-5).  Viera timely filed for judicial review of the final decision on November 7, 2018.  (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Viera's medical record, function and disability reports, and testimony as to her conditions and

---

[1]

 Viera had filed a previous application for SSI.  On June 27, 2012, ALJ Oksana Xenos issued a written decision finding that Viera was not disabled under the Act.  (Tr. 85-96).  On September 5, 2013, the Appeals Council denied review, and Viera did not pursue that claim any further.  (Tr. 101-05).

resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.      The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Viera is not disabled under the Act. At Step One, the ALJ found that Viera has not engaged in substantial gainful activity since April 26, 2016 (the application date). (Tr. 27). At Step Two, the ALJ found that she has the severe impairments of rheumatoid arthritis, psychogenic seizures, bipolar disorder, migraines, and degenerative disc disease. (*Id.*). At Step Three, the ALJ found that Viera's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 28).

The ALJ then assessed Viera's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; must avoid moving machinery and unprotected heights; limited to simple, routine, and repetitive tasks, but not at a production rate or pace; can adjust to occasional changes in the work setting; can have no interaction with the public and only occasional interaction with co-workers and supervisors; and requires the option to alternate between sitting and standing every thirty minutes. (Tr. 31).

4

At Step Four, the ALJ found that Viera has no past relevant work.  (Tr. 35).  At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Viera is capable of performing the jobs of marker (81,000 jobs nationally), office helper (57,000 jobs), and mail clerk (49,500 jobs).  (Tr. 36).  As a result, the ALJ concluded that Viera is not disabled under the Act. (*Id.*).

### C.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).   In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).

The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.  Analysis**

In her motion for summary judgment, Viera argues that the ALJ erred in evaluating her subjective complaints; failing to properly account for the effects of her fibromyalgia; failing to obtain an updated medical opinion; and finding that she can perform a limited range of light work.  (Doc. #11 at 19-31).  Each of these arguments is addressed below.

*1.    Substantial Evidence Supports the ALJ's*
*Evaluation of Viera's Subjective Complaints*

In her decision, the ALJ found that Viera's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record …."  (Tr. 32).  In her motion, Viera

cites to Social Security Ruling ("SSR") 96-7p,[2] 1996 WL 374186 (July 2, 1996), arguing that, in evaluating her subjective complaints, the ALJ failed to properly evaluate her reports of headaches, recognize her efforts to alleviate her pain, and account for her tremors. (Doc. #11 at 19-26). For the reasons set forth below, the Court disagrees.

### a.    The Applicable Legal Standards

The Sixth Circuit has held that ALJs are in the best position to evaluate a claimant's subjective complaints because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, such an evaluation will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she must evaluate the claimant's symptoms by considering "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical

---

[2] SSR 96-7p has been superseded by SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). In contrast to the superseded ruling, SSR 16-3p eliminates the use of the term "credibility" from SSA policy, making clear that "subjective symptom evaluation is not an examination of an individual's character." *Soc. Sec. Rul. 16-3p*, 2017 WL 5180304, at *2. The new ruling, which applies to decisions or determinations made after March 28, 2016, does not change the two-step regulatory process for evaluating a claimant's subjective complaints or the regulatory factors for consideration of a claimant's symptoms.

sources and other persons; and any other relevant evidence in the individual's case record." *Soc. Sec. Rul. 16-3p*, 2017 WL 5180304, at *4.

In her decision, the ALJ properly set forth the two-part regulatory standard for evaluating a claimant's subjective complaints. (Tr. 31). And, in considering Viera's subjective allegations, the ALJ discussed the inconsistency between her hearing testimony and other record evidence regarding her symptoms; her medication and other methods used to treat pain; her treatment history; her daily activities; and her work history. (*E.g.*, Tr. 30, 33 (noting inconsistencies between Viera's testimony that she isolated herself and rarely left the house with admissions that she visited with her sister every other day, volunteered at her son's school several times per week, and went to the movies five times per month); Tr. 32 (noting that Viera used primarily over-the-counter medication for pain); Tr. 33 (finding Viera's allegations of disabling symptoms at odds with her daily activities, which include getting her kids off to school, cleaning the house, doing laundry, preparing food for her children, and running errands, and noting that she has shown "no attempt to ever obtain full time employment")). All of these were proper considerations. *See* 20 C.F.R. § 416.929(c)(3).

Additionally, the ALJ observed that Viera's allegations of disabling pain were inconsistent with the objective medical evidence of record (Tr. 32-33 (citing Tr. 289, 316, 323, 329 (normal musculoskeletal examinations); Tr. 458-59 (MRI of lumbar spine showed only mild multilevel degenerative changes, with no evidence of significant spinal canal narrowing); Tr. 479 (MRI of cervical spine was unremarkable); Tr. 450, 453 (no definitive diagnosis from a rheumatologist and blood tests indicated that rheumatoid

factor, ANA, and lupus anticoagulant screen were all negative)), which was also appropriate.  *See* 20 C.F.R. § 416.929(c)(2).  With little (if any) acknowledgment of the ALJ's extensive analysis in this respect, Viera now raises three specific challenges to the ALJ's evaluation of her subjective complaints – regarding her headaches, her consistent efforts to obtain pain relief, and her tremors.

### b.   *Specific Challenges*

#### (1)   Headaches

First, Viera argues that the ALJ erred in failing to account for "the frequency and intensity of [her] headaches" in the RFC.  (Doc. #11 at 21).  The Court disagrees.  The ALJ explicitly and repeatedly acknowledged Viera's complaints about headaches – and, indeed, found them to be a severe impairment at Step Two of the sequential analysis.  (Tr. 27, 30, 31, 32, 33).  The ALJ then crafted an RFC that accommodated Viera's headaches in several respects – such as by restricting her to performing simple, routine, repetitive tasks; avoiding moving machinery, unprotected heights, production rate or pace, and public contact; and limiting her to only occasional interaction with co-workers and supervisors.  (Tr. 31).

In evaluating Viera's headache complaints, the ALJ noted certain inconsistencies, pointing out that, although she testified that she has "headaches every day and migraines every other day," medical evidence shows that she denied headaches to her providers on several occasions.  (Tr. 33, 62, 791, 799).  This inconsistency was an appropriate consideration.  *See Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011) ("Consistency between a claimant's symptom complaints and the other evidence in

the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect."). The ALJ also appropriately considered the objective medical evidence in evaluating Viera's allegations of disabling headaches, *see* 20 C.F.R. § 416.929(c)(3), noting that an MRI of her brain revealed no acute intracranial findings. (Tr. 32, 460). In addition, the ALJ gave great weight to the opinion of the state agency medical consultant, Larry Jackson, M.D., who reviewed the evidence of record – including evidence pertaining to Viera's headaches – and opined that she does not have any physical limitations beyond those set forth in the RFC finding.[3] (Tr. 35, 109-13, 116-18).

Given this evidence, and because Viera points to no other specific headache-related limitation that the ALJ improperly excluded from the RFC assessment, this argument fails. *See Turvey v. Comm'r of Soc. Sec.*, No. 12-12388, 2013 WL 3271194, at *5 (E.D. Mich. June 27, 2013) ("Plaintiff does not specify any additional work-related functional limitations the ALJ should have, but did not, include in the RFC assessment ….").

### (2)   Efforts to Relieve Pain

Viera also argues that, in evaluating her subjective complaints, the ALJ erred in failing to consider her persistent efforts to obtain pain relief. (Doc. #11 at 22). Specifically, Viera asserts that she "has sought consistent medical treatment" for her

---

[3] Viera challenges the ALJ's reliance on Dr. Jackson's opinion, arguing that because it was issued in August 2016 (more than one year before the administrative hearing), an updated medical opinion should have been obtained. (Doc. #11 at 27-28). For the reasons discussed below, *infra* at 13-15, the Court disagrees and finds no error in the ALJ's decision to give this opinion great weight.

physical pain and headaches and has "undergone multiple modalities, including injections, physical therapy, [and] pain medications, all in an effort to alleviate her pain." (*Id.* at 23, 24).

Viera is simply incorrect in claiming that the ALJ ignored this evidence.[4] Indeed, the ALJ explicitly discussed her attempts to alleviate her pain through physical therapy, a home exercise program, and over-the-counter and prescription pain medications. (Tr. 32). And, although the ALJ did not specifically mention the fact that Viera received a facet joint injection in July 2016 (Tr. 677), this omission, standing alone, does not warrant remand, as the ALJ is not required to discuss every single piece of evidence in the record. *See Kornecky*, 167 F. App'x at 508.

In sum, where the ALJ specifically accommodated Viera's pain by limiting her to a reduced range of light work, and she has not pointed to any additional functional, work-related limitations that should have been imposed, her argument fails. *See Berry v. Comm'r of Soc. Sec.*, No. 16-10548, 2016 WL 7664225, at *11 (E.D. Mich. Dec.8, 2016) (declining to remand where the plaintiff gave "no indication what additional restrictions might be necessary to accommodate his conditions, but merely mention[ed] the possibility that the ALJ *could have* included more restrictive limitations in his RFC

---

[4] It bears mentioning that, in advancing this argument, Viera relies on authority that is no longer good law. Specifically, she cites SSR 96-7p for the proposition that persistent attempts to relieve pain "'may be a *strong* indication that the symptoms are a source of distress to the individual and *generally lend support* to an individual's allegations of intense and persistent symptoms." (Doc. #11 at 22-23 (quoting *SSR 96-7p*, 1996 WL 374186, at *7 (July 2, 1996) (emphasis added)). But, this Ruling was rescinded prior to the ALJ's decision in this case. *See SSR 16-3p*, 2016 WL 1119029, at *1 (Mar. 16, 2016). In the new Ruling, the Agency removed the word "strong" from the above-quoted text and emphasized that persistent attempts to relieve pain "may" – but do not necessarily – show that symptoms are intense and persistent. *Id.* at *9.

assessment") (emphasis in original).

(3)   <u>Tremors</u>

Additionally, Viera argues that the ALJ erred in evaluating her tremors, claiming that this condition made it difficult for her to engage in certain activities, such as getting dressed and writing. (Doc. #11 at 24-25). But, the ALJ did not "completely disregard[]" Viera's tremors, as she asserts. (*Id.* at 26). Rather, the ALJ explicitly and repeatedly discussed Viera's complaints of tremors, but reasonably and supportably found this condition non-severe (a finding that Viera does not challenge). (*E.g.*, Tr. 32 (no evidence of tremors on examination), 33 (normal psychomotor activity, despite reports of "infrequent" tremors), 34 (discounting reports that Viera cannot use her right arm or hand due to tremors, where evidence she does laundry and cooks meals)). As discussed above, the ALJ was not required to simply accept Viera's subjective complaints about her tremors, and her decision to discount these allegations is supported by substantial evidence.

2.   *Viera Has Identified No Error in the ALJ's*<br>*Evaluation of Her Alleged Fibromyalgia*

Viera next argues that the ALJ erred in considering the effects of her alleged fibromyalgia on her ability to work. (Doc. #11 at 24-26). This argument is not well-articulated, and it is difficult to understand exactly where Viera believes the ALJ erred. The ALJ considered Viera's allegations of fibromyalgia at Step Two of the sequential analysis, finding that this condition is not a medically determinable impairment because (1) the medical evidence does not support "at least 11 positive tender points on

examination"; and (2) "there is no evidence that other possible disorders that could cause the symptoms were excluded."[5]  (Tr. 28).  Viera does not appear to challenge the ALJ's finding that this condition is not a medically determinable impairment and, thus, any such argument is waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  Moreover, to the extent Viera argues that the ALJ failed to account for the "overall body pain" she suffers as a result of her alleged fibromyalgia (Doc. #11 at 26), the Court has already found that the evaluation of Viera's subjective complaints of pain is supported by substantial evidence, see *supra* at 6-12.  Thus this argument also fails.

> 3.    The ALJ Did Not Err in Failing to
>        Obtain an Updated Medical Opinion

In evaluating the medical opinion evidence of record, the ALJ gave "great weight" to the August 2016 opinions of state agency medical consultants Larry Irey, Ph.D. and Larry Jackson, M.D.  (Tr. 34, 35).  These consultants reviewed Viera's medical records and together opined that she can perform a reduced range of light work, and can perform simple tasks and make simple decisions in jobs that can tolerate some variability in sustained concentration and do not require fast-paced production quota.  (Tr. 108-22). Viera now argues that, because there was "voluminous new medical evidence added to

---

[5] Pursuant to SSR 12-2p, fibromyalgia is not a medically determinable impairment unless, in relevant part, a physician has provided evidence that satisfies certain criteria issued by the American College of Rheumatology in either 1990 or 2010.  *See SSR 12-2p*, 2012 WL 3104869, at *2-3 (July 25, 2012).  Both sets of criteria require evidence that other possible disorders that could cause the symptoms were excluded, and, in addition, the 1990 criteria require at least 11 positive tender points on physical examination.  *Id.*

the record" after the state agency medical consultants reviewed the case and issued their opinions, the ALJ erred when she failed to call a medical advisor to testify at the hearing or obtain an updated consultative examination.    (Doc. #11 at 27-28).    The Court disagrees.

As an initial matter, in advancing this argument, Viera relies on SSR 96-6p, which provides, in relevant part, that an ALJ "must obtain an updated medical opinion from a medical expert" when "additional medical evidence is received *that in the opinion of the [ALJ]* may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments."    SSR 96-6p, 1996 WL 374180, at *3-4 (July 2, 1996) (emphasis added). There are several problems with Viera's argument, however.

As the Commissioner correctly points out, SSR 96-6p was rescinded on March 27, 2017.  (Doc. #14 at 19 (citing SSR 17-2p, 2017 WL 3928306, at *1 (Mar. 27, 2017)).  At any rate, SSR 96-6p does not help Viera's case.   SSR 96-6p leaves the decision of whether to obtain an updated medical opinion within the discretion of the ALJ.   *See Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 723 (6th Cir. 2012) ("SSR 96-6p thus requires that the ALJ obtain an updated medical opinion *only* when the ALJ believes that the evidence could change a consultant's finding that the impairment is not equivalent to a listed impairment.") (internal quotations omitted) (emphasis in original).   This is entirely consistent with 20 C.F.R. § 416.920b(b), which provides, in relevant part:

> If the evidence in your case record is insufficient or inconsistent, we may need to take the additional actions in paragraphs (b)(1) through (4) of this section.

14

(1) If any of the evidence in your case record, including any medical opinion(s) and prior administrative medical findings, is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have.

(2) If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after considering the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency. We will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (b)(2)(i) through (b)(2)(iv) of this section. We might not take all of the actions listed below. We will consider any additional evidence we receive together with the evidence we already have.

(i) We may recontact your medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. If we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return;

(ii) We may request additional existing evidence;

(iii) We may ask you to undergo a consultative examination at our expense (see §§ 416.917 through 416.919t); or

(iv) We may ask you or others for more information.

20 C.F.R. § 416.920b(b).

Viera does not acknowledge the discretion granted to the ALJ in this regard, *id.* ("We *may* ask you to undergo a consultative examination . . .") (emphasis added); rather, she simply claims that because various medical records were admitted into evidence after the state agency doctors provided their opinions, an updated medical opinion was

"necessary." (Doc. #11 at 28). Viera's argument lacks merit. The Sixth Circuit has recognized, that the mere fact that medical records post-date a state agency physician's opinion does not mean the ALJ must obtain an updated opinion. Rather, where medical records post-date a state agency physician's decision, the ALJ must only give "some indication" that she "at least considered" the subsequent facts that the state agency doctors lacked. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (internal quotations omitted). Here, the ALJ did just that, noting in her written decision that she carefully considered "all the evidence" in "the entire record." (Tr. 26, 27, 31, 32). Proof of this consideration is evident in the written decision as the ALJ explicitly addressed several exhibits that contained evidence post-dating the August 2016 state agency opinions (Tr. 28, 29, 32, 34, 35 (citing Tr. 637-852)), and she included limitations in the RFC finding that are more restrictive than those imposed by one of the state agency doctors (*Compare* Tr. 31 (ALJ's finding that Viera is limited to no interaction with the public and only occasional interaction with co-workers and supervisors) *with* Tr. 120 (state agency consultant's opinion that Viera's ability to carry out basic work-related interactions with the general public, co-workers, and supervisors "appears intact")). In short, a review of the ALJ's written decision makes clear that she considered all of the evidence of record, including that submitted after the state agency physicians issued their opinions. *See Davis v. Comm'r of Soc. Sec.*, No. 18-10228, 2019 WL 2051899, at *4 (E.D. Mich. Feb. 19, 2019) (ALJ had no duty to obtain an updated medical opinion where the written decision clearly indicated that he considered subsequent medical evidence). The ALJ did not indicate that the record evidence was insufficient or inconsistent such

that she "need[ed] to take additional actions" like obtaining an updated consulting physician opinion.  20 C.F.R. § 416.920b(b).  Viera has not identified any particular medical record that the ALJ failed to properly consider as it relates to this argument. Thus, Viera has established no error on the part of the ALJ in declining to obtain an additional, updated medical opinion in this case.

### 4.  The ALJ Did Not Err in Finding Viera Capable of Light – Rather than Sedentary – Work, Given Her Assessed Limitations

Lastly, Viera argues that the ALJ erred in finding that she can perform a reduced range of light work, despite her need for "a sit/stand option to alternate between sitting and standing every 30 minutes."  (Tr. 31).  Specifically, Viera asserts that "the primary feature of light work is 'a good deal of standing and walking.'" (Doc. #11 at 29 (quoting *Soc. Sec. Rul.* 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983)).  From there, Viera claims that, because the ALJ expressly found her "incapable of undertaking a good deal of standing or walking, instead giving the requirement of a sit/stand option allowing [her] to alternate every 30 minutes[,]" she should have been limited to sedentary work.  (*Id.* at 29-31).

In support of this argument, Viera cites to the Social Security Administrations Program Operations Manual System ("POMS"), which offers some guidance for cases in which a claimant's exertional abilities fall between two exertional levels – here, light and sedentary – for which the applicable rules direct opposite findings as to disability.[6]  (*Id.* at

---

[6] As the Commissioner correctly points out, Viera's reliance on the POMS is particularly inappropriate here, where the relevant rules do not "direct opposite conclusions"; rather, both provide that a claimant with Viera's vocational traits and *only exertional* limitations (Viera has both exertional and non-exertional limitations) would *not* be disabled.  *See* 20 C.F.R. Part 404, Subpt. P, App'x 2 §§ 202.20, 201.27.

30-31 (citing POMS DI 25025.015)).  In such cases, the POMS directs the Commissioner to apply the higher-numbered rule, and find the claimant not disabled, if she "has a slightly reduced capacity for the higher level of exertion"; or to apply the lower-numbered rule, and find the claimant disabled, if she has a "significantly reduced capacity for the higher level of exertion."  POMS DI 25025.015(D).

As an initial matter, however, this Court has made clear that, "[t]hough the Sixth Circuit considers it 'persuasive,' [the] POMS 'does not have the force and effect of law.'" *Rutledge v. Comm'r of Soc. Sec.*, No. 17-13651, 2019 WL 1465354, at *15 (E.D. Mich. Jan. 31, 2019) (quoting *Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989)).  Moreover, even assuming the applicability of the POMS, there is no indication that the ALJ violated its terms here.  Rather, in her decision, the ALJ simply found that Viera's ability to perform the requirements of light work was "impeded by additional limitations."  (Tr. 36).  As a result, to determine the extent to which those additional limitations eroded the unskilled light occupational base, the ALJ consulted the VE.  (*Id.*).  And, because the VE testified that, with the additional limitations identified, the hypothetical individual individual could work as a marker, office helper, or mail clerk – all light jobs available in substantial numbers nationwide (more than 187,000 such positions) – the ALJ found Viera capable of performing a significant number of jobs that exist in the national economy.  (*Id.*).  This approach is entirely consistent with both the Administration's policy and relevant case law.  *See, e.g.,* SSR 83-12, 1983 WL 31253, at *3 (Jan. 1, 1983) (providing that an ALJ should consult a VE to clarify the impact of a sit-stand option on a claimant's ability to perform light work); *Rutledge*, 2019 WL 1465354,

at *15-16 (finding "no indication the ALJ rebelled against POMS DI 25025.015(D)" where he questioned the VE to clarify the impact of a sit/stand option on the claimant's ability to perform light work).  Thus, Viera has identified no error warranting remand.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #14**) be **GRANTED**, Viera's Motion for Summary Judgment (**Doc. #11**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.


Dated: October 25, 2019                          s/David R. Grand
Ann Arbor, Michigan                              DAVID R. GRAND
                                                 United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may

have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 25, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager